**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

FILED

JAN 23 2020

U.S. DISTRICT COURT-WVND
WHEELING, WV 26003

UNITED STATES OF AMERICA,

      Plaintiff,

v.

                                CRIM. ACTION NO.: 5:18CR14-8
                                (BAILEY)

CEDRIC DOUGLAS,

        Defendant.

## REPORT AND RECOMMENDATION TO THE DISTRICT JUDGE RECOMMENDING THAT DEFENDANT'S SECOND MOTION [333] TO SUPPRESS BE DENIED

Currently pending before the Court is Defendant's Second Motion [333] to Suppress, filed December 23, 2019. The Government filed a Response in Opposition [334] on January 2, 20202. The Court held an oral argument/evidentiary hearing on January 13, 2020. After considering the parties' briefs, the applicable law and the Court file, and after considering the evidence and argument presented during the aforementioned hearing, the undersigned would **RECOMMEND** that Defendant's Second Motion to Suppress [ECF No. 333] be **DENIED**.

## I.
## FACTUAL/PROCEDURAL HISTORY

On April 3, 2018, Defendant was indicted on one count for Conspiracy to Distribute and to Possess with the Intent to Distribute Controlled Substances. On December 4, 2018, a Superseding Indictment was returned against Defendant, charging him with one count of Conspiracy to Distribute and to Possess with the Intent to Distribute Controlled Substances, two counts of Distribution of Methamphetamine, and one count of Possession with Intent to Distribute Methamphetamine. A forfeiture allegation is contained within the Superseding Indictment. [ECF No. 172].

Defendant previously filed a Motion to Suppress [ECF No. 270] on May 7, 2019.  In said Motion, Defendant argued that the evidence seized should be suppressed because the stop of the vehicle in which Defendant was riding was not justified at its inception.  Defendant also argued that there was no probable cause to search the subject vehicle at the scene of the stop, and that a warrant should have been obtained before the vehicle was searched further once in police custody.  Finally, Defendant argued that the Government's reliance on a drug dog could not stand because no information was given as to the same.  The Government opposed this Motion, arguing that the aforementioned stop and was a ruse in order to protect the integrity of the ongoing drug investigation.

Defendant's first Motion to Suppress was denied on May 15, 2019.  As stated above, Defendant filed his Second Motion to Suppress on December 23, 2019.  The substance of Defendant's Motion is addressed below.

## II.
## ARGUMENTS OF THE PARTIES

### A. Defendant's Arguments

Defendant argues that he is entitled to a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1987) because false statements were recklessly made by officers in support of an application for the subject tracking warrant, and said statements related to matters necessary to the finding of probable cause to issue said tracking warrant.  Defendant further contends that the Ohio municipal judge who issued the tracking warrant lacked the authority to do so.

### B. Government's Arguments

The Government argues that the affidavit for the tracking warrant was sufficient on its face to justify probable cause to install the tracker, and there were no procedural irregularities in how the warrant was obtained and monitored.  The Government further argues that any alleged inconsistencies or alleged falsehoods in the affidavit do not warrant a *Franks* hearing.  The Government contends that, even if the warrant at issue lacks probable cause for placement of the GPS tracker, other evidence

2

supports the good faith exception pursuant to *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405 (1984).  Finally, the Government argues that Defendant has not supported his argument vis-à-vis the jurisdictional authority of the Ohio municipal court judge with statutory or case law.  As such, the same should be disregarded.

**III.**
**STANDARDS**

The burden of proof for a Motion to Suppress is on the party seeking to suppress the evidence. *United States v. Gualtero*, 62 F.Supp.3d 479, 482 (E.D. Va. 2014) ("[t]he legal standards governing a motion to suppress are clear….[t]he burden of proof is on the party who seeks to suppress the evidence") (citing *United States v. Dickerson*, 655 F.2d 559, 561 (4th Cir. 1981)).  Once the defendant establishes a basis for his Motion, the burden shifts to the Government to prove by a preponderance of the evidence that the challenged evidence is admissible. *Id.* (citing *United States v. Matlock*, 415 U.S. 164, 177 n. 14 (1974) ("the controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence").

With these standards in mind, the undersigned will turn to the substance of the arguments raised vis-à-vis Defendant's Second Motion to Suppress.

**IV.**
**DISCUSSION**

**A. Search Warrant**

Defendant first contends that he is entitled to a *Franks* hearing because the representations made in the affidavit in support of the application for the subject tracking warrant were false, made with reckless disregard for the truth, and the balance of the affidavit does not support a probable cause finding.

The *Franks* Court held as follows:

3

where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

*Franks v. Delaware*, 438 U.S. 154, 155 (1978).  The *Franks* Court expounded upon this holding, instructing thusly:

[t]here is…a presumption of validity with respect to the affidavit supporting the search warrant.  To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine.  There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof…The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not any nongovernmental informant….[I]f these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable case, no hearing is required….[I]f the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing.

*Id.* at 171.  In the instant case, though Defendant has made an offer of proof, the undersigned is not convinced that the proof upon which Defendant relies constitutes a substantial preliminary showing that false statements were made in the affidavit in support of the application for tracking warrant, and that such statements were made with a reckless disregard for the truth as is required by prevailing case law.[1]  Therefore, and as will be explained *infra*, the undersigned does not believe that Defendant is entitled to a *Franks* hearing.

**1. Initial Observations**

Defendant relies primarily upon three documents in support of his Motion: (1) Exhibit 1, which is the affidavit in support of the subject tracking warrant and which was authored by Robert Schuler of the Columbus Police Department, Criminal Intelligence Unit; (2) Exhibit 2, which is a "Report of Investigation" authored by the United States Department of Justice, Drug Enforcement Administration;

---

[1] Defendant has conceded that the officers did not deliberately or knowingly present false information within the affidavit.  Defendant's sole contention appears to be that officers acted in reckless disregard for the truth.  Accordingly, the undersigned will consider this basis only when making the analysis.

4

and (3) Exhibit 3, which is an Investigative Report from the Columbus Division of Police – Special Services Bureau and which was authored by Detective Franklin Lucci. According to the Government, Exhibit 2 was authored by Christopher Barbour, a Special Agent with the DEA. As noted by the Government in its response, this report is merely a summary and not meant to be an all-inclusive recounting of each piece of law enforcement's investigation. Further, there is nothing in the record before the Court to suggest that this report was relied upon by the affiant at issue, Robert Schuler. Indeed, other than the affidavit, none of the documents appended to Defendant's Motion appear to have been authored by Robert Schuler. Therefore, to the extent that Robert Schuler did not author those reports, to the extent that the reports capture observations of officers other than the affiant, and to the extent that these reports are not all-inclusive recounting of the overall investigation, they do not necessarily indicate that Mr. Schuler made false statements in his affidavit with a reckless disregard for the truth.

Additionally, the undersigned notes that no evidence has been presented as to the specific process undertaken to procure the subject tracking warrant. That is, there is no evidence in the record concerning whether officers presented to the municipal judge in person, whether a verbal statement(s) was given under oath in addition to the affidavit, whether additional paperwork was submitted to the municipal judge in addition to the affidavit, or whether the affidavit itself was the sole piece of evidence upon which the municipal judge relied when deciding whether probable cause existed to issue the subject warrant. Indeed, it is unclear just what evidence (other than the affidavit) the municipal judge reviewed (if any) when determining whether to issue the subject tracking warrant. It is not even clear whether the municipal judge reviewed Exhibits 2 and 3 while deciding whether to issue the warrant. Without knowing the specific parameters of all of the evidence presented to the municipal judge and considered by him when determining whether to issue the subject tracking warrant, the undersigned is

unable to meaningfully consider whether officers presented false information to the municipal judge, and that they did so in reckless disregard for the truth.

Notwithstanding the above, and assuming that the municipal judge reviewed and considered the affidavit at issue as well as the other Exhibits appended to Defendant's Motion, the undersigned would nevertheless conclude that Defendant's arguments are without merit.

## 2.   Variance #1[2] - February 21, 2018, Meeting

Defendant notes that, with respect to the event which allegedly occurred on February 21, 2018 involving Defendant and Rodriquies Evans, the affiant stated that police were able to observe the last four numbers of the license plate of Defendant's vehicle, i.e. 8705.  However, a review of Defendant's Exhibit 2 reveals that officers reported being "unable to acquire a license plate or affect a traffic stop of this source vehicle."  Defendant urges the Court to conclude that this statement means officers were unable to acquire any license plate information.  The undersigned is not convinced that the two statements are equivalent, however.  While Exhibit 2 provides that "[s]urveillance units…were unable to acquire a license plate or affect a traffic stop of the source vehicle," this statement does not necessarily mean that surveillance units were unable to obtain any information regarding the license plate.  There is no other language in Defendant's Exhibit 2 that supports such an exclusionary reading.

Additionally, simply because a notation regarding officers' ability to see the last four digits of the subject license plate is not contained within the Exhibits appended to Defendant's Motion does not necessarily mean that there is no support for this assertion elsewhere in the extensive discovery and/or investigatory record, or that the municipal judge was not presented with support for this assertion.  As was noted above, Exhibit 2 is a summary of the investigation, not a detailed reporting of all

---

[2] Defendant refers to the allegedly reckless statements as "variances" within his Motion.  For ease of reference, the undersigned will use this verbiage as well.

investigative events. Additionally, and as was noted above, it is unclear just what information was presented to the municipal judge when the warrant was requested. Because of this, the undersigned does not believe that the Exhibits appended to Defendant's Motion support the conclusion which Defendant urges the Court to make.

Defendant also takes issue with the fact that Detective Best described Defendant's vehicle as a 'white truck or an SUV' when Defendant's vehicle was, in fact, a truck. Defendant concludes that, based upon this description, the reporting officer could not tell the difference between an SUV and a truck, and that this fact makes it "hard to believe" that the officer could see the four digits but not the three letters on the license plate at issue. The undersigned is not persuaded by Defendant's reasoning. After reviewing the evidence and arguments submitted to the Court, the undersigned would conclude that the terms "truck" and "SUV" are being used interchangeably. While this might not have been the undersigned's chosen verbiage in this instance, the undersigned nevertheless is not prepared to conclude that the use of these two terms to describe what seems to be one vehicle indicates that either Detective Best or the affiant, or both, were untruthful, either recklessly or purposefully, about what could be seen on the target license plate. Indeed, interchangeable use of the terms "SUV" and "truck" is not so unusual as to warrant such a conclusion.

Next, Defendant takes issue with the categorization of events of February 21, 2018 as a "meet." Specifically, Defendant argues that the affidavit misrepresented this event because, Defendant contends, it is clear that no meeting occurred. In other words, there is no evidence that anyone from either involved vehicle made in person contact or spoke with each other. The event, according to Defendant, involved only two vehicles parked side by side for a matter of minutes before leaving the area. The undersigned is similarly not persuaded by this argument.

First, as was noted above, it is unclear just what information the municipal judge was presented when the warrant was sought. Therefore, it is unclear whether and to what extent the municipal judge

was aware of the context of these events, or whether and to what extent the municipal judge was advised of the circumstances of the overall investigation.  Without these parameters, the undersigned is not prepared to conclude that what is described in the affidavit and/or the Exhibits appended to Defendant's Motion misrepresents the nature of the actual event.  Notwithstanding this, and assuming that the municipal judge reviewed the Exhibits attached to Defendant' Motion, the undersigned would nevertheless conclude that the reports at issue do not mischaracterize the nature of the event which occurred on February 21, 2018.

The affidavit describes the February 21, 2018 event as an attempted meeting ("[o]n February 21, 2018 Defectives were informed by investigative means that Mr. Evans was attempting to meet with his narcotics supplier to purchase a substantial amount of narcotics") (emphasis added).  ECF No. 333-1.  The affiant was clear and definite in his description of the events of this day.  He candidly describes the fact that the vehicles were in the same area for only a few minutes before the vehicles left the area.  There is no description or statement that the drivers and/or any passengers from the involved vehicles met with each other.  Rather, it is clear that the import of this event is the fact that Mr. Evans and Defendant's vehicles were in the same area and at the same time that they were supposed to meet to make a narcotics transaction (according to surveillance).

As is clear from the Exhibits, police officers intercepted communications between Co-Defendant Evans and Defendant about setting up a meeting for this approximate time and approximate place.  It is also clear from the documents that officers knew what vehicles Mr. Evans and Defendant were driving, so officers knew who the vehicles were when they arrived at the aforementioned meeting place.  Therefore, any implication that these vehicles were just two random vehicles seemingly unrelated to each other is not accurate.  Rather, and based upon the available evidence, it appears that officers reasonably concluded this event was an attempted meeting between Mr. Evans and Defendant.

Notably, the investigative documents reveal that Mr. Evans and Defendant felt there were too many cops around and aborted the meeting.

### 3. Variance #2 – February 24, 2018, Meeting

With respect to Variance #2, the undersigned is similarly not persuaded by Defendant's arguments.  Defendant contends that the affidavit misrepresented the nature of the events of February 24, 2018, by stating that Mr. Evans and Mr. Banks met on this date with their supplier to purchase "another substantial amount of narcotics."  However, Defendant contends that "it is clear that there was no transaction."  Rather, Defendant argues that this event only involved two vehicles stopped at the same place and a short conversation between occupants.  *See* ECF No. 333, pg. 7.  However, Defendant oversimplifies the nature of the events described and removes the context within which investigating officers appear to have understood this meeting.

It is clear from the Exhibits attached to Defendant's Motion that officers had intercepted communications between Mr. Banks and Mr. Evans and a person who officers believed to be their narcotics supplier (Defendant).  During these conversations, the parties discussed purchasing narcotics and arrangements to complete said purchase, including meeting places.  Officers appear to have known the vehicle Mr. Evans and Mr. Banks were driving.  Based upon intercepted phone conversations, Officers believed they knew the vehicle the alleged supplier (Defendant) was driving.  When these vehicles appeared in the planned meeting place, and when occupants of those vehicles met with each other, this meeting, when viewed in context of all other known information, lead officers to believe and conclude that a drug transaction had taken place.  This conclusion is a reasonable one given the background information upon which officers were operating.  It is of no moment that officers did not actually witness an exchange of drugs during the meeting.  Such direct and explicit evidence is not required to satisfy the probable cause standard.  *See Maryland v. Pringle*, 540 U.S. 366, 371 (2003) ("[t]he probable-cause standard is incapable of precise definition or quantification into percentages

because it deals with probabilities and depends on the totality of the circumstances….the substance of all the definitions of probable cause is a reasonable ground for belief of guilt") (internal citations and quotations omitted).

### B. Jurisdiction - Franklin County Municipal Court Authority

Defendant next argues that the Franklin County Municipal Judge who issued the tracking warrant was without authority to do so because Franklin County Municipal Judges' authority extends only within Franklin County.  According to Defendant, Franklin County Municipal Judges lack authority to authorize a search outside of Franklin County, Ohio.  Because the traffic stop at issue in this case occurred in Madison County, Ohio, Defendant contends that the search occurred outside of Franklin County, in Madison County, Ohio, and is therefore invalid.  Defendant relies upon Ohio Revised Code Title XIX – Courts – Municipal, Chapter 1901.20(A) in support of this argument, which provides in pertinent part as follows:

> The municipal court has jurisdiction to hear misdemeanor cases committed within its territory and has jurisdiction over the violation of any ordinance of any municipal corporation within its territory, including exclusive jurisdiction over every civil action concerning a violation of a state traffic law or a municipal traffic ordinance.

For the reasons that follow, the undersigned is not persuaded by this argument.

First, the undersigned notes that the above-quoted statute does not discuss an Ohio Municipal Judge's authority to approve and/or issue a search or tracking warrant.  Therefore, to the extent Defendant argues that the municipal judge did not have authority to issue a tracking warrant, and to the extent Defendant relies on the aforementioned statute to make this argument, the undersigned believes this argument is without merit.

Additionally, to the extent that Defendant contends the traffic stop was impermissibly made because it occurred in a county different than the county wherein the search/tracking warrant was authorized, the undersigned similarly believes this argument is without merit.  Defendant has not cited, and the undersigned is unaware of any case or statutory law which invalidates a tracking warrant issued

by an Ohio Municipal Judge if the tracker and the vehicle to which it is attached leaves the county wherein the municipal judge presides. Moreover, as the Government points out, such an argument, when taken to its logical conclusion, would render a tracking warrant issued by a municipal judge essentially meaningless because each time the vehicle to which the tracker was attached entered a different jurisdiction (be it state or federal), officers would have to apply for a new warrant. Given the obvious mobility of a vehicle, it is highly likely that officers would be unable to obtain authorization for such a tracking warrant before the vehicle at issue left the jurisdiction in which they were attempting to obtain the warrant and entered yet another jurisdiction. Imposing such a requirement upon officers would frustrate and indeed nullify the very purpose of a tracking warrant.

Finally, even if Defendant's argument is correct (that because the Defendant's vehicle was stopped outside of Franklin County, Ohio, the tracking warrant was invalid basis upon which to effectuate the stop), the undersigned would nevertheless conclude that the evidence obtained from said stop should not be excluded because the good faith exception would apply. It is clear that the placement and subsequent usage of a GPS tracking device to monitor the movements of a private vehicle constitutes a search within the meaning of the Fourth Amendment. *United States v. Jones*, 565 U.S. 400, 132 S.Ct. 945 (2012). However, "[w]hether the exclusionary sanction is appropriately imposed in a particular case…is an issue separate from the question [of] whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct." *United States v. Leon*, 468 U.S. 897, 906 (1984) (quoting *Illinois v. Gates*, 462 U.S. 213, 223 (1983)) (internal citations and quotations omitted). "When officers have acted pursuant to a warrant, the prosecution should ordinarily be able to establish objective good faith without substantial expenditure of judicial time." *Leon,* 468 U.S. at 924. Here, officers stopped Defendant's vehicle pursuant to a warrant obtained from a Franklin County Municipal Judge. As a result, the Government is entitled to rely upon the good faith exception to the exclusionary rule.

## C. Miscellaneous

In his brief, Defendant contends that the affidavit in support of the tracking warrant at issue provides "no basis for reliability and no statement regarding corroboration as required in *Draper v. U.S.*", 358 U.S. 307, 313 (1959).  ECF No. 333 at pg. 9.  However, the undersigned's review of *Draper v. U.S.*, 358 U.S. 307 (1959) did not reveal the requirement of a "statement regarding corroboration" to which Defendant refers.  Further, a review of the affidavit demonstrates a basis for reliability, i.e. the events which are described in the affidavit appear to have been directly observed by officers themselves during the course of the pertinent investigation.  Because of this, the instant case is distinguishable from *Draper* wherein the affidavit in support of the warrant relied upon information supplied by an informer, not the police officer himself.  *See Draper, generally*.

Additionally, Defendant argues that the subject affidavit fails "under the more modern test set forth in *Illinois v. Gates*, 462 U.S. 213, 238 (1983)".  ECF No. 333 at pg. 9.  In *Gates*, the Supreme Court abandoned the two-pronged test established in prior cases, and in its place, "reaffirm[ed] the totality-of-the-circumstances analysis that traditionally has informed probable cause determinations." *Gates*, 462 U.S. at 238.  The Court went on to explain that, in view of this test, bare bones, conclusory statements will not suffice as valid bases for a probable cause finding.  *Id.*  Here, a review of the subject affidavit makes clear that more than just bare bones, conclusory statements were provided to the Franklin County Municipal Judge in support of the application for a tracking warrant.  Indeed, the affiant provided specific and detailed facts in support of the request for a warrant.  And although not specifically stated, it is clear from the affidavit that much of the information concerning the events described was obtained via direct police officer surveillance and interviews with arrestees, rather than just through a confidential informant or via anonymous tip (as was discussed briefly in *Gates*). Therefore, the undersigned believes that, based upon the totality of the circumstances presented, the

municipal judge had a substantial basis for concluding that probable cause existed in this instance. *Gates*, 462 U.S. at 238-39.

## D. Good Faith Exception

The Government argues that, even if the warrant at issue lacks probable cause, other evidence known to the affiant but not included in the affidavit supports the good faith exception set forth in *United States v. Leon*, 468 U.S. 897 (1984):

> [i]n the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.

*Leon*, 468 U.S. at 926. "Suppression...remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth." *Id.* at 923. Suppression also remains an appropriate remedy where "the issuing magistrate wholly abandoned his judicial role in the manner condemned in *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979)"; where an affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and where "a warrant is so facially deficient...that the executing officers cannot reasonably presume it to be valid." *Id.* (internal citations and quotations omitted). As has been discussed at length above, the undersigned is not prepared to conclude based on the evidence presented that the statements made in the affidavit at issue were made with a reckless disregard for the truth. Additionally, the undersigned is not prepared to conclude that the municipal judge was misled by any allegations contained within the affidavit, or that he wholly abandoned his judicial role, that the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, or that the warrant was so facially deficient that the executing officers could not reasonably presume that it was valid. Therefore, assuming that probable cause can be found <u>not</u> to

have existed, the undersigned would nevertheless conclude that the good faith exception set forth in *Leon, supra* would apply and the evidence at issue should not be subject to the exclusionary rule.

## V.
## CONCLUSION

Defendant has failed to establish a basis upon which to suppress the evidence that is the subject of his Motion.  Further, the Government has demonstrated that probable cause existed for issuance of the GPS tracker, and that there is no authority upon which to make a finding that the Ohio municipal judge who issued the warrant lacked jurisdiction to do so.  Accordingly, and for all of the foregoing reasons, the undersigned **RECOMMENDS** that the Defendant's Motion to Suppress Evidence [ECF No. 333] be **DENIED**.

Any party who appears *pro se* and any counsel of record, as applicable, may, within **fourteen (14) days** after being served with a copy of this Report and Recommendation file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.  A copy of such objections should be submitted to the District Court Judge of Record.  Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.   28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to parties who appear pro se and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia, to the United States Marshals Service and to the United States Probation Office.

Dated: 1/23/2020

JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE

14