# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# Wheeling

**UNITED STATES OF AMERICA,**

    Plainitff,

v.             **Criminal No. 5:18-CR-14-8**
                Judge Bailey

**CEDRIC L. DOUGLAS,**

    Defendant.

## MEMORANDUM OPINION AND ORDER ADOPTING
## REPORT & RECOMMENDATION AND DENYING MOTION FOR *FRANKS* HEARING

Pending before this Court are Defendant's Second Motion to Suppress [Doc. 333] and the Report and Recommendation (R&R) recommending that the Second Motion to Suppress be denied [Doc. 341].

On April 3, 2018, this defendant was indicted on one count for Conspiracy to Distribute and to Possess with the Intent to Distribute Controlled Substances. On December 4, 2018, a Superseding Indictment was returned against Defendant, charging him with one count of Conspiracy to Distribute and to Possess with the Intent to Distribute Controlled Substances, two counts of Distribution of Methamphetamine, and one count of Possession with Intent to Distribute Methamphetamine. A forfeiture allegation is contained within the Superseding Indictment. [Doc. 172].

This is the second suppression motion filed by this defendant. Defendant previously filed a Motion to Suppress [Doc. 270] on May 7, 2019. In said Motion, defendant argued

1

that the evidence seized should be suppressed because the stop of the vehicle in which defendant was riding was not justified at its inception. Defendant also argued that there was no probable cause to search the subject vehicle at the scene of the stop, and that a warrant should have been obtained before the vehicle was searched further once in police custody. Finally, defendant argued that the Government's reliance on a drug dog could not stand because no information was given as to the same. The Government opposed this Motion, arguing that the aforementioned stop was a ruse in order to protect the integrity of the ongoing drug investigation.

Defendant's first Motion to Suppress was denied on May 15, 2019 [Doc. 277]. No appeal was taken to the first suppression motion.

Defendant filed his Second Motion to Suppress on December 23, 2019 [Doc. 333]. In the second motion, the defendant contends that he is entitled to a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1987), because false statements were recklessly made by officers in support of an application for the subject tracking warrant, and said statements related to matters necessary to the finding of probable cause to issue said tracking warrant. Defendant further contends that the Ohio municipal judge who issued the tracking warrant lacked the authority to do so.

The Government argues that the affidavit for the tracking warrant was sufficient on its face to justify probable cause to install the tracker, and there were no procedural irregularities in how the warrant was obtained and monitored.[1] The Government further contends that any alleged inconsistencies or alleged falsehoods in the affidavit do not

---

[1] This Court finds that the only document submitted to the Judge was the affidavit, and that the two reports which are exhibits to the motion were not provided to the Judge.

warrant a *Franks* hearing. The Government contends that, even if the warrant at issue lacks probable cause for placement of the GPS tracker, other evidence supports the good faith exception pursuant to *United States v. Leon*, 468 U.S. 897 (1984). Finally, the Government argues that Defendant has not supported his argument vis-à-vis the jurisdictional authority of the Ohio municipal court judge with statutory or case law. As such, the same should be disregarded.

"Where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks v. Delaware*, 438 U.S. 154, 155 (1978).

The Supreme Court further clarified:

There is...a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. . . . The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not any nongovernmental informant. . . . [I]f these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable case, no hearing is required. . .. [I]f the

3

remaining content is insufficient, the defendant is entitled, under the Fourth
and Fourteenth Amendments, to his hearing.

*Id.* at 171.

Magistrate Judge Mazzone found that although defendant has made an offer of proof, he was not convinced that the proof upon which defendant relies constitutes a substantial preliminary showing that false statements were made in the affidavit in support of the application for tracking warrant, and that such statements were made with a reckless disregard for the truth.[2]

The defendant contends that the affidavit in support of the warrant, when compared with reports prepared by other officers shows certain inconsistencies. In particular, these discrepancies are as follows:

1. The affidavit for warrant states that police were able to observe the last four numbers of the license plate of the vehicle. On the other hand, the DEA report states that the surveillance units were unable to acquire a license plate.

2. The affidavit describes the vehicle as a white truck or SUV. Defendant argues that it is "hard to believe" that an officer could see the four digits but not be able to tell whether the vehicle is a truck or SUV.

3. The defendant takes issue with the categorization of events of February 21, 2018 as a "meet." Specifically, Defendant argues that the affidavit misrepresented this event because, defendant contends, it is clear that no meeting occurred. In other words,

---

[2] Defendant has conceded that the officers did not deliberately or knowingly present false information within the affidavit. Defendant's sole contention appears to be that officers acted in reckless disregard for the truth.

4

there is no evidence that anyone from either involved vehicle made in person contact or spoke with each other. The event, according to defendant, involved only two vehicles parked side by side for a matter of minutes before leaving the area.

This Court is compelled to agree with the Magistrate Judge that these nits are insufficient to warrant a *Franks* hearing. The fact that only a partial license plate was observed on February 21, 2018, is not evidence of a misrepresentation. The DEA report states that no license number was obtained. That statement does not exclude a partial number. The top of the affidavit clearly states that the vehicle in question is a white Dodge Ram pickup truck. No false evidence was presented to the Ohio judge concerning the truck. Finally, with regard to the characterization of the "meet," the affidavit recites that "detectives were informed by investigative means that Mr. Evans was attempting to meet with his narcotics supplier to purchase a substantial amount of narcotics". The affidavit candidly describes the fact that the vehicles were in the same area for only a few minutes before the vehicles left the area. There is no description or statement that the drivers and/or any passengers from the involved vehicles met with each other. Rather, it is clear that the import of this event is the fact that Mr. Evans and defendant's vehicles were in the same area and at the same time that they were supposed to meet to make a narcotics transaction.

The Exhibits submitted by the defendant do not contradict the affidavit; the exhibits recite that police officers intercepted communications between co-defendant Evans and this defendant about setting up a meeting for this approximate time and approximate place. It is also clear from the documents that officers knew what vehicles Mr. Evans and defendant were driving, so officers knew who the vehicles were when they arrived at the

aforementioned meeting place. Therefore, any implication that these vehicles were just two random vehicles seemingly unrelated to each other is not accurate. Rather, and based upon the available evidence, it appears that officers reasonably concluded this event was an attempted meeting between Mr. Evans and defendant.

With respect to the second meeting on February 24, 2018, defendant contends that the affidavit misrepresented the nature of the events of February 24, 2018, by stating that Mr. Evans and Mr. Banks met on this date with their supplier to purchase "another substantial amount of narcotics." Defendant contends that "it is clear that there was no transaction." Rather, Defendant argues that this event only involved two vehicles stopped at the same place and a short conversation between occupants.

The Exhibits do not contradict the allegations in the affidavit. The Exhibits show that officers had intercepted communications between Mr. Banks and Mr. Evans and a person who officers believed to be their narcotics supplier (Defendant). During these conversations, the parties discussed purchasing narcotics and arrangements to complete said purchase, including meeting places. Officers knew the vehicle Mr. Evans and Mr. Banks were driving. Based upon intercepted phone conversations, officers believed they knew the vehicle the alleged supplier (Defendant) was driving. When these vehicles appeared in the planned meeting place, and when occupants of those vehicles met with each other, this meeting, when viewed in context of all other known information, led officers to believe and conclude that a drug transaction had taken place. This conclusion is a reasonable one given the background information upon which officers were operating. It is of no moment that officers did not actually witness an exchange of drugs during the meeting. Such direct and explicit evidence is not required to satisfy the probable cause

standard. See **Maryland v. Fringle**, 540 U.S. 366, 371 (2003) ("[t]he probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances...the substance of all the definitions of probable cause is a reasonable ground for belief of guilt") (internal citations and quotations omitted).

For the reasons stated above, this Court concurs with the Magistrate Judge that no **Franks** hearing is required.

The defendant also challenges the authority of the Franklin County Municipal Judge who issued the warrant. First, the defendant contends that the officers were seeking the warrant to facilitate a federal investigation and were required by Rule 41 of the Federal Rules of Criminal Procedure to seek the warrant from a federal judicial officer.

In **United States v. Claridy**, 601 F.3d 276 (4th Cir. 2010), the Fourth Circuit addressed the issue of search warrants obtained in connection with a joint investigation:

> Despite the arguments made to us in this case, and indeed in the other earlier cases cited, urging us to focus almost entirely on the character of the investigation in which the search warrant was obtained, see **Williams**, 977 F.2d at 870; **Smith**, 914 F.2d at 569; **Johnson**, 451 F.2d at 1322, the triggering condition for application of Rule 41 is not a finding that the investigation was federal in nature but a determination that the proceeding was a federal proceeding. Criminal investigations are not "proceedings" in United States courts or state courts, subject to court rules, but rather a function of the law enforcement officers in the Executive Branch. To be sure,

investigations are typically designed to lead to proceedings through the prosecution of suspects, and officers frequently initiate proceedings to aid their investigations, by, for example, going to court to obtain a wiretap, a search warrant, or an arrest warrant. Nonetheless, Rule 41's application must hinge on whether the proceeding, as distinct from the investigation, was federal.

This is not to say that when federal agents conduct an investigation into violations of federal law and then proceed to apply for a search warrant in aid of that investigation, the question of whether the investigation was federal in nature does not map nicely onto the question of what body of law governs the issuance of the warrant. *See Williams*, 977 F.2d at 869–70; *Smith*, 914 F.2d at 569. Indeed, it does. The same is true of the situation where state officers conduct an investigation into violations of state law, applying for search warrants in aid of the investigation.

When, however, federal and state agencies cooperate and form a joint law-enforcement effort, investigating violations of both federal and state law, an application for a search warrant cannot categorically be deemed a "proceeding" governed by the Federal Rules of Criminal Procedure, based simply on the role that federal law-enforcement officers played in the investigation. *See, e.g., Smith*, 914 F.2d at 569 (observing that mere involvement of federal officers in the execution of the search warrants does not trigger application of Rule 41). Such an investigation is conducted on behalf of both sovereigns, and its object is to reveal evidence of crime-be it

federal crime or state crime.

Moreover, there is nothing in the Federal Rules of Criminal Procedure that suggests that in a joint federal-state law-enforcement investigation, all search warrants must be obtained under Federal Rule of Criminal Procedure 41(b). Stated differently, nothing in the Federal Rules of Criminal Procedure suggests that a joint task force cannot use either federal or state investigatory tools governed, respectively, by federal or state law. *See United States v. Sellers*, 483 F.2d 37, 43 (5th Cir. 1973). Restricting warrants issued under state law to the requirements of Rule 41 in every joint investigation would "place officers acting jointly on the horns of a dilemma in deciding whether to charge state or federal crimes. Such officials should be free to make a considered choice based on the best available information and unencumbered by merely technical procedural rules." *Id.* at 44. We recognize, of course, that the decision with respect to the court in which charges are to be brought is often made by the Office of the United States Attorney and the state prosecutor, not the investigating officer.

Thus, the question of what law governs the application for a warrant cannot be resolved solely on the basis of the investigation's character, but instead turns on the nature of the judicial proceeding undertaken during the course of the investigation, such as a proceeding initiated by the application for a search warrant. Therefore, when a member of a joint task force initiates a proceeding in state court to obtain a search warrant in furtherance of the joint investigation, it is not only relevant to understand the role of

federal officers in obtaining the warrant and conducting the search, but it is also necessary to review the details of the proceeding itself to determine what law the warrant will serve and the scope of the warrant. Search warrants obtained during a joint federal-state investigation may be authorized by Federal Rule 41(b) or by state law and may serve to uncover violations of federal law as well as state law. *See Sellers*, 483 F.2d at 43 (recognizing that Rule 41(b)'s authorization of state courts to issue warrants is "in addition to the state-vested power of those courts" to issue warrants (second emphasis added)).

601 F.3d at 281-82.

In this case, the warrant was sought by an officer of the Columbus Police Department to a Columbus Municipal Judge. There is no evidence that a federal officer played any role in seeking the warrant or that the warrant was applied for at the direction or urging of a federal officer. *See United States v. Smith*, 914 F.2d 565, 569 (4th Cir. 1990). Accordingly, the Judge was an appropriate officeer to issue the warrant.

Next, the defendant argues that the City Judge had no jurisdiction out of his city to issue a valid warrant - as defendant calls it - "a nationwide warrant." However, in *United States v. Jones*, 565 U.S. 400, 404 (2012), the requirement for a warrant is based at least in part on the fact that the *installation* of the tracking device constituted a trespass. In *United States v. Terry*, 909 F.3d 716, 722 (4th Cir. 2018), Chief Judge Gregory, writing for the Court, described *Johnson* as "holding *installation* of a tracking device to be a search under the Fourth Amendment." (emphasis added).

The Columbus Judge had the authority to issue a warrant allowing the installation of the tracking device, while the vehicle was in Columbus. The fact that the vehicle then traveled outside of Columbus is of no constitutional concern.

For the reasons stated above, Defendant's Second Motion to Suppress **[Doc. 333]** is **DENIED** and the Report and Recommendation (R&R) recommending that the Second Motion to Suppress be Denied **[Doc. 341]** is **ADOPTED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to any counsel of record herein.

**DATED:** February 13, 2020.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE